UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOHN A. BEACH, | ) |
| | ) |
|         PLAINTIFF | ) |
| | ) |
| v. | ) |
| | )   CIVIL NO. 1:15-CV-103-DBH |
| MICHAEL TODD SMITH, | ) |
| INDIVIDUALLY, AND CMC & | ) |
| MAINTENANCE, INC., | ) |
| | ) |
|         DEFENDANTS | ) |
| | ) |

**DECISION AND ORDER ON DEFENDANT SMITH'S MOTION TO DISMISS**

Does a private employee of a government contractor have a <u>Bivens</u> damages remedy against a federal Border Patrol agent-in-charge at the Border Station where the employee is assigned to work when the agent-in-charge retaliates against him (ultimately leading to the private employee's dismissal) because he complained against the agent for religious persecution at the Station and because he participated in discrimination investigations at the Station involving charges brought by other people—federal employees—against the agent? The government (representing the agent-in-charge) has moved to dismiss the <u>Bivens</u> count under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. I **GRANT** the motion. In doing so, I view the facts alleged in the Complaint in the light most favorable to the private employee.

**FACTS**

John A. Beach was a janitor and also did lawn maintenance at the Calais Border Patrol Station in Baring, Maine. CMC & Maintenance, Inc., a Maine business corporation that has a government contract with the United States Border Patrol, employed Beach to provide those services. Compl. ¶¶ 17-20 (ECF No. 1). Michael Todd Smith was the Border Patrol's Patrol-Agent-in-Charge, the highest ranking agent at the Calais Station. Id. ¶¶ 25-26. Beach's parents are Jehovah's Witnesses, and Beach was studying to become a Jehovah's Witness. Id. ¶ 28.

Beach performed his job well, kept the Station clean, and did whatever he was asked to do. Id. ¶ 24. Agent-in-Charge Smith recurrently made highly offensive comments to Beach about religion, including Beach's and his parents' religion and that of others. (For example, when told Beach's parents were Jehovah's Witnesses, "Gees, now I have another reason to hate your parents," and in referring to a door-to-door salesman, "Why didn't you offer to have a bible study with him? That would have gotten rid of him for sure," "The only good Catholic is a dead Catholic," and "I don't like Catholics.") Id. ¶¶ 27-30.

On May 30, 2012, Beach complained about this treatment to his supervisor at the private company that employed him, and on May 31, the supervisor passed the complaint on to the Border Patrol Facilities Manager who administered the government contract, asking for it to stop. Id. ¶¶ 31-32. In retaliation, Agent-in-Charge Smith complained that Beach was not mowing the Station lawn uniformly (after measuring the grass with a ruler), and threatened to deduct money from Beach's private employer as a result. Id. ¶ 33. Beach had

2

made no change in how he mowed the lawn and had received no previous criticism about it. Id. ¶ 34. Smith then also falsely reported that Beach was always sitting in the break room or in his office playing games on the computer. Id. ¶ 35. As a result, Beach's private employer reduced Beach's work schedule from 40 to 30 hours. Id. ¶¶ 36-37. On June 11, Smith complained about Beach's job performance in writing for the first time (an email to the Border Patrol contract manager, forwarded to the private employer), even though there had been no change in Beach's job performance. Id. ¶¶ 38-40. Smith sent another such email June 26, although again there had been no change in Beach's job performance. Id. ¶¶ 41-42.

In August 2013, the Border Patrol conducted a fact-finding investigation of complaints against Agent Smith by a Border Patrol employee (not Beach), charging Smith with discrimination based on age, sex, religion, disability, race, and prior Equal Employment Opportunity ("EEO") activity. Id. ¶ 43. In its investigation, the Border Patrol interviewed Beach for approximately 2-1/2 hours and Beach answered questions that implicated Smith in the alleged discrimination. Id. ¶ 44. Agent Smith knew of the interview and was informed later what Beach said. Id. ¶ 46. In that same month, Beach was a witness in an Equal Employment Opportunity investigation prompted by still another Border Patrol employee who accused Agent Smith of discrimination based on age, sex, religion, disability, and retaliation for prior EEO activity. Id. ¶ 47. In that investigation, Beach submitted a 17-page declaration that included

allegations of religious persecution.  Id. ¶ 48.  Smith read the declaration shortly thereafter.[1]

Thereafter, Agent Smith became hypercritical of Beach's work, and stopped speaking to him or even acknowledging him.  Id. ¶¶ 50-51, 54-56.  On September 24, 2013, in retaliation for Beach's role in the fact-finding and EEO investigations as well as his earlier religious persecution complaint, Smith emailed to the contract manager a list of 63 complaints including 17 photos, the vast majority of which were about dirt and dust caused by construction activities then occurring at the Calais site.  Id. ¶¶ 57-60.  Beach's supervisor said to Beach: "[T]here's no question in my mind that this place is going to remain a hostile work environment, John, until one of two things happen: either you get fired, or Todd Smith gets fired."  Id. ¶ 62.

On September 27, 2013, and October 18, 2013, Beach complained to the Border Patrol Diversity Division that he was being retaliated against.  Id. ¶ 64.  On October 21, the Diversity Division told Beach that it could not assist him because he was not a Border Patrol employee.  Id.  On November 25, 2013, Beach's private employer terminated his employment, giving false reasons of poor work performance and leaving work early numerous times.  Id. ¶¶ 65-66.  The real reasons were Beach's involvement in the religious persecution complaint and in the fact-finding and EEO investigations, and Agent Smith's complaints to the contractor/employer about Beach, even though Beach's employer knew that

---

[1] Beach asserts this only "on information and belief," Compl. ¶ 49, but I have credited the assertion for purposes of this motion.

Smith's complaints were in retaliation for Beach's religious persecution complaints and EEO involvement.  Id. ¶¶ 67-68.

## PROCEDURAL HISTORY

Beach filed an employment discrimination charge with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").  Id. ¶ 14.  The MHRC issued a right-to-sue letter; the EEOC issued a Dismissal and Notice of Rights letter.  Id. ¶¶ 15, 16.  Beach then filed his complaint in this court against both Smith individually and Beach's private employer, seeking declaratory relief, an injunction against further violations of his constitutional and statutory rights, and monetary damages.  Id. ¶ 99.

Only Count I, entitled "First Amendment," is directed against Agent Smith.  It states that Beach's "participation in the fact-finding and EEO investigations and his religious persecution complaint were protected by the First Amendment to the United States Constitution," that they were a substantial factor in Smith's conduct toward Beach, that Smith was retaliating against Beach for his protected activity, and that Smith was acting under color of federal law.  The relief on Count I can only be damages because Beach is no longer employed at the Station, and Smith has no ability to reinstate him to his position with his employer or at the Station.  The government has moved to dismiss Count I for

failure to state a claim, arguing that federal law provides Beach no relief against Smith.² Def. Smith's Mot. to Dismiss (ECF No. 11).

## ANALYSIS

When a state or local official acting "under color of" *state* law violates a constitutional right, he is liable to the injured party under the Civil Rights Act of 1871, 42 U.S.C. § 1983.  There is no parallel statutory remedy available when a *federal* official violates a person's constitutional rights.  But the Supreme Court has sometimes recognized an implied cause of action for damages against federal officials when they violate constitutional rights.  See e.g., Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (Fourth Amendment).  Bivens is the basis for Beach's claim for relief against Border Patrol Agent/federal employee Smith in Count I.

In 2007, the Supreme Court articulated the current import of Bivens. Wilkie v. Robbins, 551 U.S. 537 (2007).  In determining whether a viable Bivens claim exists, the Supreme Court now instructs lower courts, assuming that a constitutional right has been violated, to ask first "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding damages remedy."  Id. at 550.  If no alternative remedy provides a convincing reason to refrain from providing a damages remedy, then, as a second step, "the federal courts must make the kind of remedial determination that is appropriate for a

---

² The government does not argue that Agent Smith's conduct and statements comply with the First Amendment, and I therefore proceed in this motion on the premise that they do amount to a First Amendment violation.

6

common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." Id. (citing Bush v. Lucas, 462 U.S. 367, 378); accord Minneci v. Pollard, 132 S. Ct. 617, 621 (2012).[3]  I apply that two-step analysis here.

### *Does Bivens Even Cover First Amendment Violations?*

But first, the government implies that allegations of First Amendment rights violations may never be eligible for Bivens relief at all.  Mot. to Dismiss at 7-10.

At least three circuit courts of appeals have recognized a Bivens remedy for First Amendment violations, see, e.g., Gibson v. United States, 781 F.2d 1334 (9th Cir. 1986); Dellums v. Powell, 660 F.2d 802 (D.C. Cir. 1981); Paton v. La Prade, 524 F.2d 862 (3d Cir. 1975), and I have found no circuit decisions to the contrary.  See also Rodney A. Smolla, 2 Fed. Civil Rights Act, § 14:155 (3d ed. 2013).  It is true that the Supreme Court and the First Circuit have expressed uncertainty over whether Bivens covers First Amendment violations, but neither has ever said that it does *not*.  Instead, the Supreme Court and First Circuit Bivens cases have always assumed that Bivens relief is available under the First Amendment, but then dismissed the cases on other grounds, see e.g., Wood v.

---

[3] The Supreme Court has recognized Bivens remedies for employment discrimination violating the Fifth Amendment's Due Process Clause, Davis v. Passman, 442 U.S. 228 (1979), and federal prison treatment violating the Eighth Amendment's cruel and unusual punishment prohibition, Carlson v. Green 446 U.S. 14 (1980).  It has denied Bivens remedies in cases of military service, Chappell v. Wallace, 462 U.S. 296 (1983); U.S. v. Stanley, 483 U.S. 669 (1987); federal civil service employment, Bush v. Lucas, 462 U.S. 367 (1983); wrongful denial of social security benefits, Schweiker v. Chilicky, 487 U.S. 412 (1988); where the defendant is not a federal actor, but a private company or an employee of a private company, Correctional Services Corp v. Malesko, 434 U.S. 61 (2001); Minneci v. Pollard, 132 S. Ct. 617 (2012); and where the defendant is a federal agency, FDIC v Meyer, 510 U.S. 471 (1994).  It has also recognized a defendant's immunity from suit without deciding whether a Bivens remedy otherwise would be available. Hui v. Castaneda, 559 U.S. 799 (2010).

7

Moss, 134 S. Ct. 2056, 2066 (2014) (dismissing a First Amendment Bivens claim based on qualified immunity—"we have several times assumed without deciding that Bivens extends to First Amendment claims. We do so again in this case."); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (dismissing a First Amendment Bivens claim based on qualified immunity); Bush v. Lucas, 462 U.S. 367 (1983) (dismissing a First Amendment Bivens claim by a federal employee because adequate alternative remedies were available under the Civil Service Reform Act); Air Sunshine, Inc. v. Carl, 663 F.3d 27, 35 (1st Cir. 2011) (noting that it "is questionable whether Bivens extends to cases asserting a violation of First Amendment Rights or retaliation for exercise of those rights," but ruling that it "need not decide the question" because the plaintiff's claim must be dismissed for failure to allege enough facts to establish a First Amendment violation in the first place); Bolivar v. Director of FBI, No. 94-1397, 1995 WL 8858 (1st Cir. Jan. 11, 1995) (in a case asserting a Bivens claim for First Amendment violations, dismissing due to the availability of alternative relief under the Civil Service Reform Act).[4]

Because of the circuit authority recognizing Bivens relief for a First Amendment violation and the fact that neither the Supreme Court nor the First Circuit has foreclosed a Bivens remedy in First Amendment cases, under this state of the law it is not for this district court to announce that there can never

---

[4] In Casey v. Dep't of Health and Human Servs., No. 15-1115, 2015 WL 8055949 (1st Cir. Dec. 7, 2015), the First Circuit again avoided deciding the availability of Bivens relief for First Amendment violations.

8

be a <u>Bivens</u> damages remedy for such violations.[5]  I therefore proceed to the <u>Wilkie</u> two-step analysis.

### *(1) Whether any alternative existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding damages remedy.*

Step one of <u>Wilkie</u> requires that courts examine first "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding damages remedy." <u>Wilkie</u>, 551 U.S. at 550.  The government argues that Beach has at least two alternative existing remedies—Title VII and Executive Order 11246—that together amount to a "convincing reason" to foreclose <u>Bivens</u>-style damages relief.  Mot. to Dismiss at 10-13.

### *a. Beach's Title VII Claim*

Title VII of the Civil Rights Act of 1964 states that it is an "unlawful employment practice" to discriminate against an employee either on the basis of religion or because an employee participates in any manner in an EEO investigation.  42 U.S.C. §§ 2000e-2(a)-2003e-3(a).  The government does not suggest that Beach has any remedy against Agent Smith under Title VII.  Instead, it argues that Beach has Title VII remedies against his private employer that make <u>Bivens</u> inapplicable.  Mot. to Dismiss at 10-11.  The government cites a

---

[5] The First Circuit has stated: "In the absence of clear guidance from either this court or the Supreme Court, we look to the law of other circuits." <u>D&H Therapy Assocs. v. Boston Mut. Life Ins. Co.</u>, 640 F.3d 27, 36-37 (1st Cir. 2011).  Furthermore, as the government recognizes in its motion to dismiss at 9, n.3, other district courts in this circuit have allowed <u>Bivens</u> actions to proceed for violations of the First Amendment.  See e.g., <u>Phelps v. Carr</u>, No. 07-cv-40245, 2010 WL 3895461 (D. Mass. Sept. 30, 2010); <u>Phelps v. Winn</u>, No. 05-40003, 2007 WL 2872465 (D. Mass. Sept. 27, 2007); <u>Kenna v. United States Dep't of Justice</u>, 727 F. Supp. 68 (D.N.H. 1989).

series of cases standing for the proposition that when Title VII remedies are available, a Bivens cause of action is foreclosed.[6]  Id. at 11-12.  But only one is a circuit case (Ninth Circuit) and in all but one of the cases that the government cites, the plaintiffs were aggrieved *government* employees with Title VII remedies available *against the government* as their employer, not against a private third party.[7]

The Supreme Court has never held that potential remedies against a third party constitute an adequate alternative remedy to Bivens relief against government officials who misbehave.  Redress against a third party does not provide a deterrent to governmental misbehavior like Smith's, and the Supreme Court has recognized deterrence as one of the purposes for Bivens damages:

> [T]he Bivens remedy, in addition to compensating victims, serves a deterrent purpose.  Because the Bivens remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States.  It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability.

---

[6] Agha v. Sec. of Army, No. 92-16921 1994 WL 56956 (9th Cir. Feb. 25, 1994); Hamilton-Hayyim v. Jackson, No. 12-cv-06392, 2013 WL 3944288 (N.D. Ill. July 31, 2013); Avila v. United States ex rel. United States Dep't of Commerce, No. 12-cv-3012, 2012 WL 2871784 (D. Neb. July 12, 2012); Tull v. Office of Architect of the Capitol, 806 F. Supp. 2d 80 (D.D.C. 2011); Santos v. Potter, No. 06-cv-2948, 2007 WL 926493 (N.D. Cal. Mar. 26, 2007); Taylor v. Rhode Island Dep't of Mental Health Retardation and Hosps., 726 F. Supp. 895 (D.R.I. 1989); Baird v. Haith, 724 F. Supp. 367 (D. Md. 1988).

[7] In the sole case in which the plaintiff was an employee of a private contractor, the plaintiff was pursuing a Bivens action based on Fifth Amendment violations.  See Pollack v. Ridge, 310 F. Supp. 2d 519, 528-30 (W.D.N.Y. 2004).  Although the Pollack Court referred to the plaintiff's Title VII and breach of contract claims against her employer in dismissing her Bivens claims against federal officials, the court also acknowledged that the plaintiff was simultaneously pursuing live Title VII claims *against the government*—specifically, the same federal officials against whom she had filed her Fifth Amendment Bivens claim.  Id. at 524-26, 528-30.  In contrast, Beach has no way to seek redress against Agent Smith or the government except a Bivens claim.

10

Carlson v. Green, 446 U.S. 14, 21 (1980). The Court in Carlson also highlighted the deterrent effect of the possibility of punitive damages. Id. at 22 (noting that FTCA remedies are "much less effective" than Bivens remedies because the FTCA bars punitive damages). Even as the Court has resisted extending the Bivens remedy since Carlson, it has continued to focus on the action's deterrent objectives. See Minneci, 132 S. Ct. 617 at 620, 622 (referring to adequate alternative damages as those "that provide both significant deterrence and compensation," and stating that "[a] damages remedy against an individual officer, the [Carlson] Court added, would prove a more effective deterrent"); FDIC v. Meyer, 510 U.S. 471, 485 (1994) ("It must be remembered that the purpose of Bivens is to deter *the officer*.") (emphasis original).

I therefore find the government's Title VII argument unpersuasive.

### b. *Beach's Potential Relief Under Executive Order 11246*

The government also argues that Beach should not be permitted to pursue a Bivens claim under Wilkie step one because he has existing alternative remedies under Executive Order 11246 ("Equal Employment Opportunity"), promulgated by President Johnson in 1965 with the purpose of eliminating discrimination in employment of government employees and in the employment of government contractors and subcontractors. Exec. Order No. 11246, 30 Fed. Reg. 12319 (Sept. 24, 1965). The Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") enforces Executive Order 11246 and "may seek back pay and other make whole relief for victims of discrimination identified during a complaint investigation." 41 C.F.R. § 60–1.26(a)(2).

11

The government asserts that Beach could have sought redress for his religious persecution and retaliation claims by taking advantage of the OFCCP complaint process. Mot. to Dismiss at 13. But the government provides no case in which a court has found that an executive order is a convincing reason for foreclosing judicial relief under Bivens. Permitting the executive branch by executive order to foreclose Bivens relief against a member of the executive branch raises separation of powers concerns and ignores the Supreme Court's emphasis on *Congress's* role in determining whether a cause of action should be implied. What concerns the Supreme Court when federal courts loosely recognize implied causes of action is that the judiciary is wading into an area traditionally reserved for *Congress*. See Wilkie, 551 U.S. at 562 ("We think accordingly that any damages for actions by Government employees who push too hard for the Government's benefit may come better, if at all, through legislation"); Bush, 462 U.S. at 389 ("Congress is in a far better position than a court to evaluate the impact of a new species of litigation"). Professor Bernstein has argued persuasively that to focus on the executive branch "turns Bivens's separation of powers concern on its head." Anya Bernstein, *Congressional Will and the Role of the Executive in Bivens Actions: What is Special About Special Factors?*, 45 Ind. L. Rev. 719, 729 (2012). "[Courts] should not mistake the Executive for Congress. . . . [I]n Bivens cases, it is the statutory scheme that must indicate Congress's wish regarding remedies. Without proper delegation, the Executive cannot immunize itself from Bivens remedies." Id. at 765.

Aside from the separation of powers issue, the Executive Order 11246 argument suffers from the same flaw as the argument regarding Title VII. Even

if OFCCP could seek relief for Beach from his private employer, that process does not provide Beach relief against the government official who allegedly abused his constitutional rights.

Considering both Title VII and Executive Order 11246, I conclude that they do not provide—in Wilkie's words—an "alternative, existing process for protecting the interest [that] amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding damages remedy." Wilkie 551 U.S. at 550.[8]

> ### *(2) Whether the kind of remedial determination that is appropriate for a common-law tribunal supports Bivens relief, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.*

I proceed to step two of Wilkie. According to Wilkie, the next assignment is to "weigh[ ] reasons for and against the creation of a new cause of action, the way common law judges have always done." 551 U.S. at 554. The Supreme Court instructs that, "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." Id. at 550 (citing Bush, 462 U.S. at 378). The Supreme Court has found special factors that preclude Bivens relief in activity incident to military service, Chappell v. Wallace, 462 U.S. 296 (1983), and United States v. Stanley, 483 U.S. 669 (1987), administration of the Social Security disability system, Schweiker v. Chilicky, 487 U.S. 412 (1988), and federal civil

---

[8] The government has not argued that Beach has any effective alternative remedy under state tort law such as interference with contractual or other advantageous economic relations.

13

service personnel policy, Bush, 462 U.S. 367.  But the cases do not articulate a definition of the term "special factors."  Professor Bernstein argues that the phrase "asks whether Congress has afforded any remedy, or has decided to provide no remedy, for the violation of a constitutional right," and that "the special factors analysis maintains the balance of powers between two specific branches of the federal government: the judicial and the legislative."  Bernstein, supra, at 764, 721.  Here, the government asserts that, because Congress has developed statutory schemes in the Civil Service Reform Act ("CSRA") and the Contract Disputes Act ("CDA") that cover federal *employees* and federal *contractors*, but not employees *of* federal contractors, the lack of such protection for the latter amounts to a "special factor" counseling hesitation for, and ultimately rejecting, Beach's Bivens claim.  Mot. to Dismiss at 14-18.  Before I address the special factors argument, I weigh the reasons for and against allowing Beach a Bivens cause of action.

The Supreme Court in Wilkie discounted the need for a Bivens remedy in that case in part because the Wilkie plaintiff was unlike the plaintiffs in the cases where the Supreme Court had recognized the remedy.  The Court observed: "Davis had no other remedy, Bivens himself was not thought to have an effective one, and in Carlson the plaintiff had none against Government officials."  551 U.S. at 555.  That is Beach's situation here; he has no remedy other than Bivens damages to redress Smith's treatment of him.[9]  So Beach's interest is stronger than that of the plaintiff in Wilkie.  Next, Wilkie looked at "the other side of the

---

[9] Even the Border Patrol Diversity Division told Beach that it could not assist him because he was not a Border Patrol employee.  Compl. ¶ 64.

14

ledger." Id. Devising a "workable cause of action" in Wilkie was particularly difficult because the controversy involved government officials trying to exercise government rights in negotiations, albeit going beyond proper tactics in some instances. Id. The Court said that the claim therefore "fails to fit the prior retaliation cases. Those cases turn on allegation of impermissible purpose and motivation." Id. at 556. Beach's claim is not like the claim in Wilkie, but instead like those in the "prior retaliation cases"; it does not present the difficulties of recognizing a claim that Wilkie did.[10] Making "the kind of remedial determination that is appropriate for a common-law tribunal," I conclude that a Bivens damages remedy would be appropriate for the federal official misconduct asserted to have occurred here.[11] Accordingly, I next pay "particular heed" to "any special factors counselling hesitation before authorizing a new kind of federal litigation." Id. at 550.

### a. The Civil Service Reform Act and the Contract Disputes Act

The government argues that if Beach were a federal employee working at the Calais Border Patrol station, he would be required to seek remedies for his alleged First Amendment violations under the Civil Service Reform Act, and

---

[10] Wilkie said: "A judicial standard to identify illegitimate pressure going beyond legitimately hard bargaining would be endlessly knotty to work out, and a general provision for tort-like liability when Government employees are unduly zealous in pressing a governmental interest affecting property would invite an onslaught of *Bivens* actions." Wilkie v. Robbins, 551 U.S. 537, 562 (2007). There is no comparable challenge here in determining whether Agent Smith retaliated against Beach for his religion persecution complaint or for participating in the investigation of discrimination complaints by Border Patrol employees at the Calais station.

[11] In this respect, I agree with the analysis of Navab-Safavi v. Broadcasting Bd. Of Governors, 650 F. Supp. 2d 40, 75-76 (D.D.C. 2009), assessing the judicial manageability of a Bivens claim and the lack of persuasiveness of the government's interest on the other side of the scale (comparing effects of § 1983 relief to state contractors asserting First Amendment violations, narrowness of the Bivens remedy, and availability of qualified immunity). (The plaintiff in Navab-Safavi was a federal contractor, not a contractor's employee.)

would not be able to use Bivens, see Bush, 462 U.S. at 385-90; see also Elgin v. United States Dept. of Treasury, 641 F.3d 6, 11 (1st Cir. 2011), and that if Beach were himself a federal contractor, he would be precluded from filing a Bivens action because of the Contract Disputes Act. Mot. to Dismiss at 14-17. Therefore, says the government, because the CSRA and CDA anticipate and address potential claims against the government by both its own employees and those who contract with the government, Congress must have considered (and rejected) potential claims by employees of federal contractors—Beach's situation. Id. at 15-17.

In Atterbury v. U.S. Marshals Service, 805 F.3d 398 (2d Cir. 2015), the Second Circuit found those arguments persuasive. Atterbury was a federal court security officer ("CSO") hired by a private entity that had a contract with the United States Marshals Service to provide security services to federal courthouses. The contractor terminated Atterbury's employment upon the demand of the U.S. Deputy Marshal assigned to administer the contract. Atterbury sued both the Marshals Service and the Deputy Marshal, making a Bivens claim against the Deputy for violation of due process under the Fifth Amendment. The Second Circuit held that no Bivens remedy was available to Atterbury.[12]

---

[12] Beach attempts to distinguish Atterbury on the basis that the Second Circuit concluded that CSO Atterbury had a viable claim against the Marshals Service under the Administrative Procedure Act to challenge the decision to remove him from the Court Security Program and to seek reinstatement and damages, whereas Beach has no other legal remedy. Letter on Pl's. Position on Atterbury (ECF No 17). But the Second Circuit made clear that it would deny a Bivens remedy even if it left the plaintiff "completely remediless." Atterbury v. U.S. Marshals Service, 805 F. 3d at 406.

16

Atterbury reasoned that the CDA "'purports to provide final and exclusive resolution of all disputes arising from government contracts' that fall within its ambit," and "does not provide a remedy for . . . employees of contractors." Id. at 404.[13] The court said that by not extending the CDA to subcontractors or to employees of contractors, the statute adopts a "single point of contact approach," denying anyone except primary contractors access to the CDA's administrative remedies. Id. at 405.[14] That certainly seems to be an accurate analysis of the CDA, recognizing a congressional policy that carefully circumscribes remedies in the case of government contracts.

While the CDA applies to federal contractors, the CSRA governs remedies for federal employees. Bush, 462 U.S. 367; see also Harvey v. United States Postal Service, No. 94-1729, 1995 WL 238672 (1st Cir. Apr. 25, 1995) ("The CSRA's comprehensive scheme is designed to provide the exclusive remedy for most government employee complaints of prohibited personnel practices."). This was a second factor "counseling hesitation" in Atterbury, because allowing a Bivens claim would provide a federal contractor's employee better treatment than

---

[13] In Casey v. Dep't of Health and Human Servs., the district court had refused to recognize a Bivens remedy for a government contractor's employee, saying that the CDA was the exclusive remedy for the employee. No. 15-1115, 2015 WL 8055949 at *4 (1st Cir. Dec. 7, 2015). On appeal, the First Circuit declined to decide the issue but did note that the employee may have been ineligible to bring suit under the CDA. Id. at *4 n.4. In Atterbury, the Second Circuit rejected the argument that the CDA remedy satisfied step one of Wilkie, reasoning that a contractor's employee was not in privity with the government and had no standing to bring a claim under the CDA. Atterbury, 805 F.3d 398, 404 (2d Cir. 2015). Under step two, it "decline[d] to hold that a Bivens right of action is categorically barred whenever a third party could bring suit on the plaintiff's behalf." Id. As the Second Circuit reasoned, the government contractor "indeed may prefer to acquiesce in [its employee's] dismissal rather than damage its relationship with the federal government by bringing suit against it." Id.

[14] The court found "additional support" in the CDA's legislative history for inferring an intentional congressional omission of contractors' employees from protection, specifically referring to the Senate Report's "single point of contact approach"—requiring all disputed claims relating to the contract to flow through the prime contractor. Atterbury, 805 F.3d. at 405.

Congress provided to either federal contractors or federal employees under the respective statutes. 805 F.3d at 405. Beach is just like Atterbury in that respect. A <u>Bivens</u> cause of action would provide him "a plenary action for damages in federal court, with the attendant right to a jury trial and the ability to recover punitive damages," relief not available under the CDA or the CSRA. <u>Id</u>.

Beach tries to distinguish a federal contractor's employee from the contractor itself and from direct federal employees, arguing:

> [I]t makes sense that Congress would intend federal employees and contractors—who are subject to direct government oversight and freely choose the federal government as their employer/contractor—to be likewise limited by the government in the types of claims they may assert or remedies they may receive. In the case of employees of federal contractors, however, they are controlled by the government only indirectly and may be working there only because their employers told them to do so. Congress may have felt that they should therefore be regarded more like private citizens when federal officials violate their rights.

Pl's. Response to Mot. to Dismiss at 8 (ECF No. 14). I am not persuaded. Congress knows how to preserve a <u>Bivens</u> claim when it wishes to do so.[15] I agree with the Second Circuit that "[i]t would be incongruous if [Beach], whom Congress excluded from both of these carefully drawn administrative schemes [the CDA and CSRA], were afforded access to a more liberal procedure for vindicating his rights than people or entities who, unlike [him], are in privity with the United States . . . ." <u>Atterbury</u>, 805 F.3d at 405.[16] And as the First Circuit said very recently:

---

[15] <u>See e.g.</u>, 28 U.S.C. § 2679(b)(2) concerning the Federal Tort Claims Act: "Paragraph (1) does not extend or apply to a civil action against an employee of the Government—(A) which is brought for a violation of the Constitution of the United States. . . ."

[16] Other district courts within the Second Circuit earlier reached the same conclusion. <u>Aryai v. Forfeiture Supp. Assocs.</u>, 25 F. Supp. 3d 376 (S.D.N.Y. 2012); <u>Pollock v. Ridge</u>, 310 F. Supp. 2d

18

> In the more than four decades since [deciding Bivens], the Supreme Court has extended the Bivens holding beyond its original Fourth Amendment confines only twice. The Court's hesitancy to extend Bivens further stems, at least in part, from its recognition that Congress is generally better-positioned to craft appropriate remedial schemes to address constitutional violations committed by federal officers.

Casey v. Dep't of Health and Human Serv., No. 15-1115, 2015 WL 8055949 at *3 (1st Cir. Dec. 7, 2015).  That cautionary language applies here.

I conclude that Wilkie's special factors analysis calls for refusal to recognize a Bivens cause of action.

## CONCLUSION

I am troubled by the conclusion I reach.  Beach's allegations of First Amendment violations are serious.  Beach lacks any alternative remedy against the government official who he claims deprived him of his First Amendment rights.  For Beach, as with Bivens, it is "damages or nothing." Davis v. Passman, 442 U.S. 228, 245 (1979), citing Bivens, 403 U.S. at 410 (Harlan, J., concurring in judgment).  As outsourcing continues to grow, more workers on federal premises may find themselves in this "remedy-less gap." Atterbury, 805 F.3d at 405 (internal quotations omitted).  But the comprehensive remedial statutes Congress has crafted for claims by federal contractors and subcontractors and for claims by federal employees counsel against a judge-made remedy here.  See Wilkie, 551 U.S. at 576.[17]

---

519, 529 (W.D.N.Y. 2004).  The district court in D.C. has reached the contrary conclusion, ruling that neither the CDA nor the APA precludes Bivens damages relief for First Amendment violations.  Navab-Safavi v. Broadcasting Bd. of Governors, 650 F. Supp. 2d 40 (D.D.C. 2009).

[17] As the Supreme Court stated in Schweiker, "when the design of a Government program suggests that Congress has provided what it considers to be adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, [the Supreme Court has] not created additional Bivens remedies."  487 U.S. at 423.

The government's motion to dismiss the claim against the defendant Agent-in-Charge Smith under Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

**SO ORDERED.**

**DATED THIS 10TH DAY OF DECEMBER, 2015**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**